## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RICHARD LEWICK,

        Plaintiff,

v.                                                Case No. 21-1251-DDC-ADM

SAMPLER STORES, INC.,

        Defendant.

## MEMORANDUM AND ORDER

Plaintiff Richard Lewick brings suit under Title VII of the Civil Rights Act of 1964[1] alleging sex discrimination against his former employer, defendant Sampler Stores, Inc. Plaintiff alleges that defendant discriminated against him when it hired a "less-qualified (outside) female" for a Store Management position instead of promoting plaintiff. Doc. 7 at 2 (Am. Compl. ¶ 15). Defendant filed a Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6). Doc. 9 (Def.'s Mot. to Dismiss). For reasons explained below, the court grants defendant's motion.

## I.    Facts[2]

Defendant hired plaintiff as a Sales Associate for defendant at a Rally House located in Wichita, Kansas on October 10, 2018. Doc. 7 at 1–2 (Am. Compl. ¶¶ 2, 10). He shortly

---

[1] Plaintiff's Amended Complaint asserts: "Thus, Defendant is in violation of the Civil Rights Act of 1964, and other provisions of the Americans with Disabilities Act [(ADA)]." Doc. 7 at 3 (Am. Compl. ¶ 28). But, the Amended Complaint identifies only one claim, a count alleging sex discrimination. *Id.* at 2–4 (Am. Compl. ¶¶ 20–29). The rest of the Amended Complaint never mentions the ADA. And none of the Motion to Dismiss briefing discusses the ADA. Thus, the court assumes that plaintiff brings only one Title VII claim.

[2] The following facts come from Plaintiff's Amended Complaint (Doc. 7). The court accepts these facts as true and views them in the light most favorable to plaintiff. *SEC v. Shields*, 744 F.3d 633, 640

transitioned out of an entry level position when defendant promoted him to Sales Team Lead on March 1, 2019. *Id.* (Am. Compl. ¶ 10). Plaintiff continued this upward trajectory and received a second promotion to Manager in Training (MIT) in October 2019. *Id.* (Am. Compl. ¶ 11). After receiving these promotions, plaintiff began having discussions with management about further promotion to an Assistant Store Manager or Store Manager position. *Id.* (Am. Compl. ¶ 13). In these discussions, management assured plaintiff that they would "seriously consid[er]" him for the promotions. *Id.* (Am. Compl. ¶ 14). But, sometime after these conversations, plaintiff learned that "less-qualified (outside) female candidates" were hired in the Store Manager position and in Plaintiff's MIT position. *Id.* (Am. Compl. ¶ 15). Because the Amended Complaint omits the date and circumstances surrounding plaintiff's departure from Rally House, it is unclear whether plaintiff learned this information before or after he stopped working for defendant. With the knowledge that defendant had hired women in the Store Manager and MIT positions, plaintiff filed a complaint with the EEOC in November 2020. *Id.* (Am. Compl. ¶ 16). It alleges that defendant denied him promotion on the basis of sex discrimination. *Id.* (Am. Compl. ¶ 16). The EEOC then mailed plaintiff his notice of right-to-sue on July 26, 2021. *Id.* (Am. Compl. ¶ 18).

## II.    Legal Standard

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" While this Rule "does not require 'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" which, the Supreme

---

(10th Cir. 2014) ("We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the [plaintiff]." (citation and internal quotation marks omitted)). The court recounts only the facts pertinent to the current motion.

Court has explained, "'will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume that the complaint's factual allegations are true.  *Id.* (citing *Twombly*, 550 U.S. at 555). But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief. *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

## III.   Analysis

Defendant argues that plaintiff's Amended Complaint (Doc. 7) fails to state a plausible claim for reverse sex discrimination.  The court considers that question, below, in three parts.

*First*, the court considers the appropriate pleading standard for reverse discrimination claims. *Second*, the court discusses the elements necessary to plead a prima facie case of reverse sex discrimination under Title VII.  *Third*, the court addresses whether plaintiff has alleged facts from which a reasonable fact finder plausibly could find or infer that defendant violated Title VII.

After carefully considering the arguments presented by the parties' filings, the court is prepared to rule.  Ultimately, the court grants defendant's Motion to Dismiss (Doc. 9) because plaintiff has failed to allege plausibly:  (1) "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority," *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992), or (2) "indirect evidence sufficient to support a reasonable probability that but for the plaintiff's status" he would not have suffered the challenged employment decision, *id.* at 590.  The court explains these conclusions, below[3].

### A.    Pleading Standard for Reverse Discrimination Claims

Defendant argues that the court should dismiss plaintiff's case because he has failed to "allege the necessary elements of a reverse discrimination claim."  Doc. 10 at 3 (Def.'s Mot. to Dismiss).  In response, plaintiff argues that the court can't consider the elements of an alleged cause of action at the motion to dismiss stage.  Plaintiff asserts that "the *McDonnell Douglas* framework is wholly inappropriate for the pleadings stage of litigation."  Doc. 11 at 6.  Instead, plaintiff asserts that prima facie standards are evidentiary standards for the court to consider at

---

[3]      Plaintiff's opposition to defendant's motion asks for oral argument under D. Kan. Rule 7.2.  Doc. 11 at 13.  D. Kan. Rule 7.2 provides:  "The court may set any motion for oral argument or hearing at the request of a party or on its own initiative."  After reviewing the parties' written submissions, the court finds that they explain the parties' positions quite effectively.  The court concludes that oral argument will not assist its work and thus, to grant it, would contradict Fed. R. Civ. P. 1.  Oral argument is, simply, unnecessary.  Exercising its discretion, the court denies plaintiff's request.

the summary judgment stage.  *See id.* at 5.  In support of his position, plaintiff principally relies on the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.* where the Court held that the "prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).  Plaintiff asserts that considering the prima facie standards at the pleading stage would offend *Swierkiewicz* and impose a requirement of greater specificity on Title VII claimants.  *See* Doc. 11 at 6.  The court is not persuaded.

The Supreme Court directly addressed plaintiff's concern in *Twombly*.  The *Twombly* plaintiff argued that the Court's "analysis [ran] counter to *Swierkiewicz*[.]"  *Twombly*, 550 U.S. at 569.  The Court, however, disagreed.  It noted *Swierkiewicz* had reversed the lower court's decision "on the ground that the Court of Appeals had impermissibly applied what amounted to a heightened pleading requirement by insisting that [plaintiff] allege 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."  *Id.* at 570 (quoting *Swierkiewicz*, 534 U.S. at 508).  The Court explained that, "in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."  *Id.*  Thus, the Court concluded that plaintiffs in that case had not "nudged their claims across the line from conceivable to plausible, [so] their complaint must be dismissed."  *Id.*  The Court's ruling makes clear that considering the elements necessary to allege a plausible cause of action does not violate the Court's directive to refrain from imposing a requirement of greater specificity.

Our Circuit also has held that prima facie standards are appropriate for the court to consider at the motion to dismiss stage.  "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of

action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). So, applying the governing *Twombly/Iqbal* pleading standard to the case at hand, the court next examines the prima facie elements of reverse sex discrimination under Title VII.

### B.     Elements of a Title VII Reverse Discrimination Case

Title VII prohibits discrimination in employment "because of . . . sex[.]" 42 U.S.C § 2000e-2(a)(1). A plaintiff can prove a Title VII violation through either direct evidence of discrimination or circumstantial evidence under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Khalik*, 671 F.3d at 1192. Under the *McDonnell Douglas* framework, "a plaintiff alleging a failure-to-promote claim must initially establish a prima facie case, demonstrating that: (1) [ ]he was a member of a protected class; (2) [ ]he applied for and was qualified for the position; (3) despite being qualified [ ]he was rejected; and (4) after [ ]he was rejected, the position was filled." *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003) (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000)). "For most plaintiffs, establishing a prima facie case is perfunctory, and liability turns on whether the defendant's stated explanation for the adverse employment action is pretextual." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).

But reverse discrimination claims are different. Because "members of the majority group are not necessarily entitled to a presumption of discrimination afforded to members of a minority group," *Mattioda v. White*, 323 F.3d 1288, 1292 (10th Cir. 2003), the prima facie case for reverse discrimination requires a "stronger showing," *Argo*, 452 F.3d at 1201. Reverse discrimination plaintiffs can make this stronger showing in one of two ways.

The first alternative recognized in *Notari* modifies the initial element of the prima facie case.  Instead of showing that he is a "member of a protected class"—normally the first component of the prima facie case—the reverse discrimination plaintiff must "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."  *Notari*, 971 F.2d at 589.  When the plaintiff invokes this alternative, the other three components of the prima facie case remain the same.

*Notari*'s second alternative permits plaintiff to establish his entire prima facie case by pleading "indirect evidence sufficient to support a reasonable probability that but for the plaintiff's status" he would not have suffered the challenged employment decision.  *Id.* at 590. This "but for" alternative replaces the entire prima facie case requirement normally applied to discrimination claims.  But a reverse discrimination plaintiff cannot "merely . . . allege that he was qualified and that someone with different characteristics was the beneficiary of the challenged employment decision."  *Id.*  "Instead, [such a] plaintiff must allege . . . facts that are sufficient to support a reasonable inference that but for plaintiff's status the challenged decision would not have occurred."  *Id.*  If a reverse discrimination plaintiff satisfies either formulation for the prima facie case, then the remainder of the *McDonnell Douglas* framework applies.  *Id.* at 591.  Naturally, because the current dispute arises from the motion to dismiss stage, plaintiff need not produce evidence or specific facts; instead, he must allege facts sufficient to establish a plausible inference that his employer has committed reverse sex discrimination.

## C.   The Amended Complaint Fails to Allege Facts Supporting a Prima Facie Case of Reverse Sex Discrimination

Defendant argues plaintiff has failed to satisfy either one of *Notari*'s two alternatives. *See* Doc. 10 at 4 ("Plaintiff did not allege any facts supporting an inference Defendant is one of those unusual employers who discriminates against the majority."); *see also id.* at 5 ("Plaintiff

failed to allege any indirect evidence to support discrimination.").  Plaintiff does not assert that defendant is one of those "unusual employers" who discriminates against men.  And, he cites no allegations in his Amended Complaint (Doc. 7) that assert facts capable of supporting a plausible finding or inference that defendant discriminates against men.  Instead, plaintiff just relies on his assertion that he is not required to allege background circumstances because *Notari* is no longer good law.

This argument relies on the Supreme Court's ruling two years ago in *Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731 (2020).  Plaintiff contends that "*Bostock* is now the controlling case law, and to the extent *Notari* was controlling, *Bostock* superseded it."  Doc. 11 at 9.  Plaintiff argues that "*Bostock*'s most compelling holding is the notion that discrimination is committed against individuals, not groups."  *Id.*  According to plaintiff, the "concept of reverse discrimination presumes that the types of discrimination prohibited by Title VII are categorical[.]"  *Id.* at 6–7.  Thus, plaintiff concludes that *Bostock*'s ruling precludes the concept of reverse discrimination because it rejects the notion of categorical discrimination.  *See id.* at 7.  The court is not persuaded for two reasons.

*First*, *Bostock* never discussed the appropriate prima facie standards for reverse discrimination claims.  Instead, *Bostock* explicitly answered the question "whether an employer can fire someone simply for being homosexual or transgender."  *Bostock*, 140 S. Ct. at 1737.  Plaintiff cites no specific language in *Bostock* suggesting that the Court changed reverse discrimination pleading standards.  In fact, the term "reverse discrimination" appears nowhere in *Bostock*.  *Second*, after *Bostock*, courts in our Circuit have continued to apply the *Notari* standard.  *See Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1201 (10th Cir. 2021) (affirming summary judgment against reverse discrimination claim because plaintiff failed to

satisfy *Notari* by showing "either [(1)] circumstances supporting an inference that [defendant] is 'one of those unusual employers who discriminates against' males or [(2)] facts supporting an inference that a female would not have been terminated" (internal citations omitted)); *Walker v. Answer Topeka, Inc.*, No. 20-02049-EFM, 2021 WL 2443890, at *5 (D. Kan. June 15, 2021) (applying *Notari* on summary judgment and holding that plaintiff failed "to present evidence that would support a reasonable inference that either:  (1) but-for his status as a male, he would not have suffered the alleged adverse employment action, or (2) [d]efendant is one of those unusual employers who discriminate against the majority"); *Arnall v. City of Pittsburg, Kan.*, No. 20-02107-EFM-TJJ, 2021 WL 4284527, at *4–5 (D. Kan. Sept. 21, 2021) (applying *Notari* to a summary judgment motion and holding that plaintiff failed to meet either alternative prima facie standard).

This court is duty bound to follow the controlling legal standard.  Plaintiff's opinion about the correctness of precedent does not displace this obligation.  Perhaps plaintiff can convince the Supreme Court to revisit *Bostock* and expand its holding.  But, for now, the court must reject his argument that *Notari* no longer applies to reverse discrimination claims.

Applying *Notari*'s first alternative, the court concludes plaintiff fails to allege "background circumstances" sufficient for making a "stronger showing" of a prima facie case of reverse sex discrimination.  In cases where courts have held that a plaintiff adequately had alleged "background circumstances," the allegations were supported by facts apprising the court of the employer's staffing practices generally.  *See Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1523, 1535 (10th Cir. 1995) (holding plaintiff showed background circumstances where she "was the only white employee in the otherwise all-Hispanic Bilingual/ESOL Department, and Hispanic supervisors made most of the employment decisions of which [she] complain[ed]"); *Perez v.*

*Unified Gov't*, No. 10-CV-2107-JAR/GLR, 2011 WL 2038689, at *6 (D. Kan. May 25, 2011) (finding plaintiff showed background circumstances in the "workforce composition" of employer, where of "the twenty-six employees . . . only four or five are men," "only women are in managerial or leadership roles . . . and the few men who are employed . . . are manual laborers"). But here, the Amended Complaint makes no similar allegations.

Plaintiff alleges no facts about defendant's workforce composition, hiring practices, or treatment of men more generally. He alleges only that defendant promoted a woman instead of him on just one occasion. In fact, plaintiff provides so little background information, that he never alleges the compositional outcome of *both* promotions at the heart of this action. The Amended Complaint contends that defendant filled one of the higher positions—Store Manager—with a woman, and that defendant hired a woman at the same Manager in Training level plaintiff previously held. Doc. 7 at 2 (Am. Compl. ¶ 15). But the Amended Complaint does not allege whether a man, a woman, or anyone at all received the other promotion plaintiff sought, as Assistant Store Manager. *See id.* (Am. Compl. ¶¶ 13, 14). Nor does the Amended Complaint include details about the promotions plaintiff received in the past—if they required formal applications or were offered informally, the approximate time between discussing a promotion to beginning work in the higher position, or whether defendant often spoke with others about potential promotions—facts that the court could use to compare defendant's treatment of plaintiff in those instances with how it treated plaintiff during the later actions leading to this claim.

But, as plaintiff notes, several decisions from our court have concluded that, at the motion to dismiss stage, "a failure to allege sufficient 'background circumstances' about the employer, *standing alone*, is not relevant and not a reason for dismissal." *Seymour v.*

*Tonganoxie USD 464*, No. 20-2282-JWL, 2020 WL 6742791, at *2 (D. Kan. Nov. 17, 2020) (emphasis added); *see also Slyter v. Bd. of Cnty. Comm'rs for Anderson Cnty., Kan.*, No. 11-4044-JAR, 2011 WL 6091745, at *3 (D. Kan. Dec. 7, 2011) ("To the extent there is insufficient direct evidence of reverse discrimination, or of the requisite background circumstances under a *McDonnell Douglas* approach, that is an issue properly reserved for summary judgment."). That's because *Notari* provides reverse discrimination plaintiffs with *two* alternative ways to establish a prima facie case. *Notari*'s second alternative requires the court to consider whether plaintiff "has adduced any evidence to support as a reasonable probability the inference that but for his gender, he would have been promoted." *Notari*, 971 F.2d at 590–91. Here, plaintiff simply fails to allege *any* facts that could "support a reasonable inference that but for [his] status [as a man] the challenged decision [the failure to promote] would not have occurred.'" *Argo*, 452 F.3d at 1201 (quoting *Notari*, 971 F.2d at 590). Thus, he also fails *Notari*'s second alternative for alleging a prima facie case of reverse sex discrimination.

In sum, the only allegations in his Amended Complaint are merely conclusory statements asserting that defendant treated him differently than similarly situated women. As his opposition makes clear, plaintiff labors under the mistaken conclusion that not receiving a promotion—by itself—can suffice to allege actionable differential treatment. *See* Doc. 11 at 13. But that fact alone cannot support a plausible finding or inference of reverse sex discrimination violating Title VII, not even at the motion to dismiss stage.

Our court has allowed plaintiffs to proceed with reverse discrimination claims—even in the absence of "background circumstances"—when the plaintiffs alleged facts capable of supporting a finding or plausible inference of differential treatment because of sex. *Seymour*, 2020 WL 6742791, at *2 (concluding that failing to allege "background circumstances" was not

fatal to plaintiff's claims where plaintiff's alleged supervisor excluded him from meetings that similarly situated female employees attended and plaintiff's job duties were reassigned); *Walker*, 2020 WL 4200878, at *4  (finding background circumstances irrelevant because plaintiff alleged differential treatment between himself and his female coworkers, including "several instances of his female coworkers engaging in the same activity that got him fired" without any consequence); *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 666 (D. Kan. 2014) (finding plaintiff sufficiently alleged reverse discrimination because he was given different work assignments and office hours than his fellow female employees and "even though his performance numbers were superior to similarly situated female employees he was nonetheless terminated"); *Slyter*, 2011 WL 6091745, at *3 (denying motion to dismiss where plaintiff failed to allege background circumstances because plaintiff alleged that "he reported several departmental policy violations by a junior female employee, that she was not disciplined for these violations, and that [he] was terminated for violating an unwritten [p]olicy that he was not previously made aware of soon after reporting [the] violations").  But here, the Amended Complaint contains no similar allegations from which a reasonable fact finder could find or infer plausibly that "but for" plaintiff's sex, defendant would have promoted him to the Store Manager or Assistant Store Manager position.  In sum, plaintiff hasn't alleged any facts that plausibly allege that defendant treated him differently from his fellow employees because he was a man. The court thus grants defendant's Motion to Dismiss (Doc. 9) plaintiff's reverse sex discrimination claim.[4]

---

[4]      Plaintiff doesn't ask for leave to amend his complaint to cure his pleading deficiencies.  And, he already amended his complaint once as a matter of right.  Doc. 7.  The court finds no reason to permit him another opportunity to amend because plaintiff hasn't explained that he can assert facts that would state a plausible Title VII claim.

IV.     **Conclusion**

As explained above, the court grants defendant's Motion to Dismiss (Doc. 9).  While the court assumes all of plaintiff's well-pleaded factual allegations are true, *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555), the court must evaluate those allegations under the controlling legal standard.  Plaintiff's claim under Title VII falls short of our Circuit's requirements for a plausible claim.  The court thus grants defendant's Motion to Dismiss (Doc. 9) plaintiff's Title VII sex discrimination claim.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 9) is granted.

**IT IS SO ORDERED.**

**Dated this 27th day of July, 2022, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**